IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:09-cr-00186-2 |
| | ) | Judge Trauger |
| | ) | |
| FRANCISCO JORGE SEPULVEDA | ) | |

## MEMORANDUM AND ORDER

Pending before the court is the defendant Francisco Jorge Sepulveda's Motion to Dismiss for Prosecutorial Misconduct or, in the Alternative, to Suppress Evidence of Search (Docket No. 260). For the reasons discussed herein, the defendant's motion will be denied, without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 2009, the defendant was indicted in a one-count indictment that charged that, along with nine co-defendants and others, he conspired "to unlawfully, knowingly, and intentionally possess with intent to distribute and to distribute 5 kilograms or more of . . . cocaine . . . in violation of Title 21, United States Code, Section 841(a)(1) [and 846]." (Docket No. 48 at 2.) On September 30, 2009, a superseding indictment was returned that added three co-defendants but no additional charges against any of the defendants. (Docket No. 120.) Finally, on January 6, 2010, a second superseding indictment was returned, which added a defendant but, again, no additional charges. (Docket No. 246.)

The allegations of prosecutorial misconduct and vindictiveness that are the basis of the defendant's motion to dismiss stem from the time period between the second and third superseding indictments. That is, on October 27, 2009, the defendant's brother and co-

1

defendant, Hugo Sepulveda, filed a Motion to Suppress evidence obtained pursuant to a search of his family's home. (Docket No. 260 at 1.) The defendant, as he lived in the same house as his brother, could have been reasonably expected to join this motion, and, the defendant claims: "[i]mmediately after [Hugo's] Motion to Suppress was filed, the AUSA prosecuting this case [Brent Hannafan] immediately sent the [defendant's counsel Deanna Johnson] an e-mail stating that if Defendant Jorge Sepulveda joined the Motion to Suppress of Hugo Sepulveda, the Government might file additional charges against Jorge Sepulveda." (*Id.* at 1-2.) The defendant also claims that, shortly thereafter, Hannafan advised Johnson that, in the course of the criminal investigation, a "potentially embarrassing photo[]" of the defendant was found on the defendant's phone. (*Id.* at 2.)

On November 9, 2009, undeterred, the defendant moved to join his brother's Motion to Suppress, and the court granted the motion *to join* a day later. (Docket Nos. 171 and 181.) The defendant claims that, after he joined the suppression motion, Hannafan "again threatened" to enhance the charges against the defendant "in retaliation for Jorge Sepulveda joining Hugo Sepulveda's Motion to Suppress." (Docket No. 260 at 2.) Specifically, the defendant alleges that Hannafan threatened to add a "924c charge," which would have charged that the defendant used a firearm in the furtherance of his drug trafficking crime.[1] (*Id.*; *see also* 18 U.S.C. §

---

[1] Attached to the defendant's reply in support of his Motion to Dismiss is a copy of a November 2, 2009 e-mail from Hannafan to Johnson in which he states: "Let me know if your client intends to join the motion. If he does, then I will assume he is not interested in ever having cooperating [sic] or working out a plea agreement, and he will still be subject to the possibility of our filing additional charges, such as a 924(c) charge." (Docket No. 279 at 7.) Also attached is a November 9, 2009 e-mail from Hannafan in which he states: "[b]ecause your client has now joined the motion to suppress, I take it that he . . . understands that the possibility remains that additional charges, such as a 924(c) count, may be filed against him. If that is incorrect, please let me know immediately." (*Id.* at 8.)

2

924(c)).

The defendant further claims that, in response to his failure to drop the suppression motion and in order to "embarrass and intimidate" the defendant, Hannafan put the "obscene, pornographic" picture discussed above on "an evidentiary disk, along with other evidence, and sent it to all defense counsel." (*Id.* at 2-3.) Johnson claims that Hannafan has rebuffed her requests for him to retrieve the disks from all defense counsel so that the picture can be deleted and destroyed. (*Id.* at 3.)

The evidentiary hearing on the suppression motion was held on December 29-30, 2009, and the defendants' Motion to Suppress was denied. (Docket Nos. 239 and 242.) As noted above, about a week later, the second superseding indictment was returned, and that indictment did not add any charges against the defendant.

Consistent with the defendant's recitation of the facts and the e-mails noted above, the Government concedes that, on November 2, 2009, in the context of a series of e-mails regarding a potential plea agreement and the merits of the suppression motion, "the prosecutor advised defense counsel . . . that [the defendant] would remain subject to additional charges, such as . . . [the] Section 924(c) charge . . . if he joined the motion to suppress." (Docket No. 278 at 3.) However, also consistent with these materials, the Government points out that "[a]t no point during those communications did the prosecutor tell defendant's counsel that a Section 924(c) charge would in fact be filed if the defendant joined his brother's motion to suppress." (*Id.*)

The Government also concedes that, on the day that the defendant moved to join the suppression motion, Hannafan again advised Johnson of "the possibility . . . that additional charges could be brought against [the defendant]," but, again, Hannafan never said that

3

additional charges would definitely be brought.  (*Id.*)  Additionally, the Government maintains that, in further plea discussions, including those after the suppression motion was denied, the Government never stated that additional charges would be brought as a consequence of the defendant's pursuit of the suppression motion.  (*Id.*)

As to the cell phone photo issue, the Government contends that, while Hannafan initially told Johnson that the defendant was in the pornographic picture, a few days later, he advised Johnson that it was not clear who was in the picture and that the only certain connection between the picture and the defendant was that the picture was found on the defendant's phone.  (*Id.* at 5.)  The Government maintains that, on December 14, 2009, consistent with its discovery obligations in this conspiracy case, it "produced identical sets of discovery to [all] the defendants," which included "the phone books, call logs, text messages, photographs, and other data downloaded from all the phones," including the picture at issue here.  (*Id.*)

The Government states that the defendant did not demand the return of the photograph until January 12, 2010, a month after its disclosure and two weeks after the suppression hearing, and, at that time, the Government "informed defendant that it had no obligation to" retrieve and return the photo "but suggested that counsel make that request to co-defendants' counsel."  (*Id.* at 6.)  The next day, the defendant filed the pending motion, seeking dismissal of the charge against him, or alternatively, suppression of the evidence obtained in the search of the family home "because the publication of the pornographic picture was done in an attempt to cause defense counsel to withdraw her Motion to Join the Suppression Motion filed by the attorneys for Hugo Sepulveda."  (Docket No. 260 at 3-4.)

## **ANALYSIS**

4

The defendant seeks to have the charge against him dismissed on the grounds of vindictive prosecution. "It is well established that due process protects against prosecutorial retaliation for a defendant's exercise of a statutory or constitutional right." *U.S. v. Moon*, 513 F.3d 527, 535 (6th Cir. 2008). That is, "to punish a person because he has done something the law plainly allows him to do is a due process violation of the most basic sort." (*Id.*)(quoting *U.S. v. Goodwin*, 457 U.S. 368, 372 (1982)). Also, "prosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pre-trial assertions of protected rights." *U.S. v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001).

To be entitled to relief for prosecutorial vindictiveness in the pre-trial context, the defendant must demonstrate a "realistic likelihood of vindictiveness," which the defendant shows through proof that the prosecutor had a "stake" in deterring the defendant's exercise of his rights and that the prosecutor's conduct was unreasonable.[2] *Moon*, 513 F.3d at 535. Once the defendant meets this burden, the burden shifts back to the Government to disprove the defendant's case of vindictiveness or to justify the challenged state action. *Bragan*, 249 F.3d at 482. If the Government fails to rebut the defendant's claim of vindictiveness, "the remedy is dismissal of the charges or other appropriate remedies." *Id.*

In his motion, the defendant cites no law or authority for dismissing the charge against him on the grounds of prosecutorial vindictiveness; rather, he simply claims that Hannafan (1) threatened to bring additional charges and (2) produced embarrassing evidence because the

---

[2]The defendant can also prove vindictiveness directly, that is, through "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights. . . . This showing, however, is exceedingly difficult to make." *Bragan v. Poindexter*, 249 F.3d. 476, 481 (6th Cir. 2001)(internal quotation omitted).

5

defendant proceeded with the motion to suppress, and, therefore, the charge against the defendant should be dismissed. (Docket No. 260.)

### A. Threats to Bring Additional Charges

As to the threats to bring additional charges, the Government focuses on the fact that "no additional charge has been brought against the defendant." (Docket No. 278 at 7.) Therefore, "any claim of vindictive prosecution is premature at best." (*Id.*) The Government goes on to cite a series of (somewhat misplaced) cases that hold that prosecutorial vindictiveness is not implicated when the prosecutor enhances charges against a defendant in response to the breakdown of plea agreement negotiations. (*Id*. at 8)(citing, among others, *Suarez*, 263 F.3d at 479-80). In his reply, the defendant, again citing no on-point authority, argues that "the threats of new charges in an attempt to force Defendant and his attorney to forego Defendant's Fourth Amendment rights . . . was vindictive and amounted to prosecutorial misconduct."[3] (Docket No. 279 at 1.)

Clearly, under the law discussed above, it is a violation of the defendant's due process rights for a prosecutor, with a vindictive motive, to add charges or to take other punitive action against a defendant because that defendant exercised his Fourth Amendment rights, as the defendant did in this case. But, again, the Government has not actually added charges against the defendant, and, while warnings/threats were made by the Government, they were not sufficiently strong to dissuade the defendant from joining the suppression motion. The lack of

---

[3]In his reply, the defendant does cite the Sixth Circuit's seminal *Andrews* case for the basic proposition that "[a] prosecution violates the due process clause of the Fifth Amendment when the prosecutor acts vindictively by punishing the defendant for exercising a protected right." (Docket No. 279 at 3)(*citing U.S. v. Andrews*, 633 F.2d 449, 453-55 (6th Cir. 1980)).

any significant tangible effect flowing from the threat counsels against a finding of prosecutorial vindictiveness. *See U.S. v. Lanoue*, 137 F.3d 656, 664 (1st Cir. 1998)( "Successful assertions of vindictive prosecution are most common where a defendant advances some procedural or constitutional right and *is then punished for doing so.*")(emphasis added); *see also U.S. v. Degarmo*, 2008 WL 731546, *1 (D. Neb. Mar. 17, 2008)(profane e-mail from prosecutor to defense counsel indicated vindictive feelings on the part of the prosecutor, but, without any evidence that those feelings were manifested in any tangible way, such as by increasing "the number or severity of the charges," a claim for vindictive prosecution was not viable).

Similar efforts to establish a claim of prosecutorial vindictiveness in the absence of added charges or other punitive conduct have been rejected by the Sixth Circuit. For instance, in *Suarez*, the defendant was charged with certain violations of the Travel Act, charges that the defendant claimed were only pursued vindictively. *Suarez*, 263 F.3d at 481-82. While the prosecutor obtained an indictment on the Travel Act charges, he dismissed them prior to trial. *Id.* The court noted that, even if the defendant could establish all of the other elements of vindictiveness as to the Travel Act charges, because the "normal remedy" for prosecutorial vindictiveness is to "bar the augmented charge," a claim for prosecutorial vindictiveness based upon charges that were not brought to trial would be "meaningless." *Id.* Focusing on the fact that the vindictive conduct must have some tangible impact, the court concluded: "the vindictive prosecution doctrine is designed to prevent *retaliation* for the assertion of protected rights, not to police the emotions of prosecutors." *Id.* (emphasis added).

In sum, while Mr. Hannafan may have threatened to undertake conduct (adding charges) that would have violated the defendant's due process rights, the Government has not actually

7

added charges against the defendant, and the threats/warnings were not sufficient to dissuade the defendant from joining the suppression motion. Therefore, at this time, the defendant's argument here cannot provide fertile ground for a motion to dismiss on the basis of prosecutorial vindictiveness.

   B.   **The Pornographic Picture**

Additionally, the defendant's arguments regarding the dissemination of the pornographic picture do not aid his claim of prosecutorial vindictiveness. First, as the Government points out, under Federal Rule of Criminal Procedure 16, the Government is required, in the course of responding to discovery requests, to provide items "obtained from . . . the defendant." Fed. R. Crim. P. 16(a)(1)(E)(iii).

Moreover, the defendant's suggestion that the Government attempted to use the photo improperly is not supported by the record. E-mails attached to the defendant's reply suggest that, on November 3, 2009, Hannafan first advised Johnson that the embarrassing picture of the defendant was found on the defendant's phone. (Docket No. 279 at 8.) The defendant does not challenge the Government's recollection of a subsequent conversation between Hannafan and Johnson, in which Hannafan clarified that there was no way to know who is depicted in the photograph. (*See id.* at 11.)

It is also not disputed that the photograph was disclosed to all defendants as part of a large document production by the Government on December 14, 2009, in which all media from all of the defendants' phones was produced. (Docket No. 278 at 5.) In the defendant's reply, Johnson claims to have received "the discovery packet on or about December 20, 2009 [but] because of the holidays and preparation for the Suppression hearing, [she] did not have a chance

8

to review and analyze this new discovery packet until January 9, 2010." (Docket No. 279 at 3.) Consistent with this, from the e-mails, it appears that the issue of the photo does not resurface between counsel until January 9, 2010, when Johnson raised objections to the photo having been disclosed to all defense counsel, to which Hannafan responded, in essence, that, consistent with the Government's discovery procedures in this conspiracy case, all pictures found on all phones were sent to all defendants. (*Id.* at 10-11.)

In sum, there is simply no suggestion from the record that the Government attempted to arrange a "quid pro quo" in regards to the suppression motion prior to the disclosure of the photograph or that the Government disclosed the embarrassing picture of the defendant to punish him for having exercised his Fourth Amendment rights. Rather, it appears that the photo was disclosed in accordance with the Government's disclosure procedures in this case, and, therefore, on this record, there is no basis for sanctions against the Government because the Government disclosed the photo at issue.[4]

### C. Conclusion

---

[4] In his reply, the defendant claims that the entire ordeal surrounding the photograph has been "extremely embarrassing" and implies that, while the "cat is already out of the bag," as alternative relief, the court should order the photo returned. (Docket No. 279 at 2, 4.) The Government states that, if the other defendants returned their discovery packets, it would redact the photo and then re-issue the discovery. (Docket No. 278 at 11.) But, the Government cautions, the evidentiary value of the photo remains unknown, and the Government does not waive its rights to further use the photograph in the course of this litigation, including as an exhibit at trial. (*Id.* at 11-12.) In light of the fact that the Government is (seemingly reasonably) preserving its rights to use this evidence, the limited interest in protecting the defendant from further embarrassment is easily outweighed by the burden and prejudice that return would impose upon the other defendants, and, therefore, the court will not order the return of the photo.

The defendant is not entitled to his requested relief at this time. But, in light of the e-mails and the Government's conduct to this point, the court would entertain further motion practice on this issue, should additional charges be added against this defendant or if additional evidence were to come to light that corroborated the defendant's claim that there was an illicit motive for the disclosure of the photo.[5]

The defendant's Motion to Dismiss for Prosecutorial Misconduct or, in the Alternative, to Suppress Evidence of Search (Docket No. 260) is **DENIED**, without prejudice**.**

It is so ordered.

Enter this 5th day of February 2010.

_____
ALETA A. TRAUGER
United States District Judge

---

[5] In its response, the Government "requests that this Court strike the Motion from the record or, in the alternative, deny the Motion." (Docket No. 278 at 1.) The court infers from the request to strike that the Government views this motion as so frivolous and devoid of merit that it should not be allowed to stain the record of this case. As discussed herein, the motion is premature, but, in light of the Government's admitted conduct, certainly not frivolous.